UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KRISTOFER LOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 3:12-CV-00096-TLS |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, Norfolk Southern Railway Company ("NS"), by counsel, submits this brief in support of its Motion for Summary Judgment [DE 28], as follows:

**I. INTRODUCTION**

Plaintiff, Kristofer Loy, has filed a Complaint against NS under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, asserting that he was injured on March 21, 2009, "while attempting to adjust a railroad car drawbar, which was skewed, when it failed to couple on impact with another car." *Compl.* ¶¶ 8, 9.

The Complaint alleges that NS caused plaintiff's injuries when it "failed to provide [him] with a safe place to work" and "violated certain safety standards including 49 C.F.R. Part 213, the Safety Appliance Act 49 U.S.C. 20301, *et seq.*, and associated federal regulations." *Id.* ¶ 11.a., b.

Because not a scintilla of evidence exists that NS was negligent or violated any safety standards in connection with this alleged incident, NS is entitled to the entry of summary judgment.

**II. STATEMENT OF MATERIAL FACTS**

1.      On the day of the alleged incident, Saturday, March 21, 2009, plaintiff was working as a conductor/trainman in Elkhart Yard. *Compl.* ¶¶ 7, 8; **Exhibit A** – *Dep. of Kristofer Loy* p. 29, ll. 11-15.

2. Plaintiff was working the YBES 15 assignment, which is a west-end "pullback" job on the south side of the Classification (or "Class") Yard. **Exhibit A** – *Dep. of Kristofer Loy* p. 33, ll. 7-16, p. 35, ll. 1-9, and attached Ex. E, pp. 3-4.

3. Plaintiff went on duty at 7:00 a.m. and claims the incident occurred sometime between 10:00 a.m. and 12:00 p.m. **Exhibit A** – *Dep. of Kristofer Loy* p. 29, l. 19 to p. 30, l. 14.

4. While coupling cars in the Class Yard, plaintiff was walking along a track and came upon two rail cars with bypassed drawbars that had not coupled together. **Exhibit A** – *Dep. of Kristofer Loy* p. 37, ll. 1-12; p. 105, ll. 11-24.

5. The drawbars of both cars were slewed and butted up against the cars. **Exhibit A** – *Dep. of Kristofer Loy* p. 33, ll. 7-16, p. 35, ll. 1-9, and attached Ex. E, p. 6; p. 37, ll. 18-20; p. 45, ll. 2-3.

6. Plaintiff did not record or tell anyone the car numbers of the two rail cars he says had slewed drawbars. **Exhibit A** – *Dep. of Kristofer Loy* p. 39, ll. 3-12 and Ex. E, p. 6.

7. Plaintiff was unable to say in which track the cars were located in the Class Yard. **Exhibit A** – *Dep. of Kristofer Loy* p. 33, l. 25 to p. 34, l.11 and attached Ex. E, p. 5.

8. Plaintiff did not observe the two cars failing to couple and has no knowledge of when they failed to couple. **Exhibit A** – *Dep. of Kristofer Loy* p. 38, ll. 8-12; p. 38, l. 17 to p. 39, l. 2.

9. For two rail cars to couple, a knuckle on at least one of the drawbars must be open. **Exhibit A** – *Dep. of Kristofer Loy* p. 39, ll. 17-19.

10. The knuckle on the west end of a rail car is always open when it is humped west-bound into the Class Yard in Elkhart Yard; it is not possible for a car to go into the Class Yard without the lead knuckle being open. **Exhibit A** – *Dep. of Kristofer Loy* p. 39, l. 20 to p. 40, l. 13.

11. When plaintiff found the two bypassed drawbars, he radioed the engineer, Ken Gonyon, and asked him to pull the rail cars attached to the locomotive forward so that he could adjust the slewed drawbars. **Exhibit A** – *Dep. of Kristofer Loy* p. 40, ll. 14-19; p. 42, ll. 23-25.

12. Mr. Gonyon pulled the lead car forward at least 50 feet to allow plaintiff to adjust the drawbars after he received three-step protection. **Exhibit A** – *Dep. of Kristofer Loy* p. 43, ll. 1-6.

13. Three-step protection involved the engineer placing the locomotive's reverser in neutral, putting the generator switch down, and applying the brakes so that the train could not move while plaintiff was between the cars, then reporting to plaintiff via radio that three-step protection was in place. **Exhibit A** – *Dep. of Kristofer Loy* p. 41, l. 25 to p. 42, l. 6.

14. After receiving three-step protection, plaintiff went between the rail cars and adjusted both drawbars. **Exhibit A** – *Dep. of Kristofer Loy* p. 42, ll. 20-22; p. 43, ll. 7-13.

15. To adjust each car's drawbar, plaintiff placed his back against the drawbar, bent his knees, with his hands behind him grabbed the bottom of the drawbar, and stepped the drawbar back. **Exhibit A** – *Dep. of Kristofer Loy* p. 43, ll. 14-23.

16. Plaintiff believes he would have first adjusted the drawbar on the rail car connected to the cut of cars, then he would have walked forward to adjust the drawbar on the car still connected to the locomotive. **Exhibit A** – *Dep. of Kristofer Loy* p. 45, ll. 2-21.

17. Plaintiff believes he had no problem adjusting the first drawbar. **Exhibit A** – *Dep. of Kristofer Loy* p. 46, ll. 6-8.

18. Plaintiff believes he was adjusting the second drawbar when he hurt his back. **Exhibit A** – *Dep. of Kristofer Loy* p. 46, ll. 2-5.

19. The second drawbar was in the proper location when plaintiff says he felt a pop in his back. **Exhibit A** – *Dep. of Kristofer Loy* p. 46, ll. 9-15.

20. On each rail car, plaintiff first adjusted the drawbar, then opened its knuckle. **Exhibit A** – *Dep. of Kristofer Loy* p. 46, l. 16 to p. 47, l. 4.

21. At the time he injured his back, plaintiff was readying the car's drawbar for coupling. **Exhibit A** – *Dep. of Kristofer Loy* p. 52, ll. 15-17.

22. After adjusting the drawbars and opening the knuckles, plaintiff radioed the engineer to drop the three-step protection and instructed him to bring the train back a car's length to couple the cars. **Exhibit A** – *Dep. of Kristofer Loy* p. 47, ll. 5-14.

23. After plaintiff adjusted the drawbars and opened the knuckles, the cars coupled without any problem. **Exhibit A** – *Dep. of Kristofer Loy* p. 47, ll. 15-19.

24. After the cars were coupled Mr. Gonyon pulled the train out, and there was no problem with the cars staying coupled together. **Exhibit A** – *Dep. of Kristofer Loy* p. 48, ll. 10-18.

25. Plaintiff has no knowledge of anything defective on either of the drawbars or knuckles. **Exhibit A** – *Dep. of Kristofer Loy* p. 47, l. 20 to p. 48, l. 4.

26. Plaintiff has no knowledge of a track defect. **Exhibit A** – *Dep. of Kristofer Loy* p. 48, l. 25 to p. 49, l. 2.

27. Plaintiff has no knowledge of a defect or problem with the humping equipment on the occasion when he says the two cars failed to couple. **Exhibit A** – *Dep. of Kristofer Loy* p. 49, ll. 3-23.

28. Plaintiff has no evidence that one of the cars was humped too fast and knows nothing about the type of impact involved when the car was humped into the Class Yard. **Exhibit A** – *Dep. of Kristofer Loy* p. 51, ll. 10-15.

29. Plaintiff has no evidence that one of the cars was humped into the wrong track. **Exhibit A** – *Dep. of Kristofer Loy* p. 51, ll. 16-18.

30. Plaintiff worked the remainder of his shift on March 21, 2009, and also worked a full shift the following day, Sunday, March 22, 2009, on second shift. **Exhibit A** – *Dep. of Kristofer Loy* p. 30, l. 25 to p. 31, l. 3; p. 31, ll. 16-18.

31. Plaintiff did not report an injury until two days later on Monday, March 23, 2009. **Exhibit A** – *Dep. of Kristofer Loy* p. 32, ll. 3-5.

32. Plaintiff believes the rail car involved in the alleged incident had a long drawbar, which has more lateral travel than on cars equipped with short drawbars. **Exhibit A** – *Dep. of Kristofer Loy* p. 52, l. 25 to p. 53, l. 5.

33. Plaintiff returned to work as a conductor in March 2011. **Exhibit A** – *Dep. of Kristofer Loy* p. 69, l. 23 to p. 70, l. 3.

34. After a short period of time off work from May 2012 to August 2012, plaintiff returned to work as a conductor for about one month, then went to locomotive engineer training school. **Exhibit A** – *Dep. of Kristofer Loy* p. 70, ll. 4-11; p. 74, ll. 2-5; p. 75, ll. 1-10.

35. After completing locomotive engineer training, plaintiff began working and became certified as an engineer trainee. **Exhibit A** – *Dep. of Kristofer Loy* p. 75, ll. 10-22.

### III.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"One of the principal purposes of the summary judgment rule is to . . . dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Rule 56 mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* at 322.

The defendant bears the initial burden of demonstrating the absence of evidence to support the plaintiff's claim, but there no requirement that the defendant negate the claim. *Id.* at 323. Once the defendant has met its burden, the plaintiff may not rest on the conclusory allegations of his complaint, but must come forward with evidence showing the existence of a genuine issue of material fact for trial. *Id.* at 324.

To avoid summary judgment, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Summary judgment must be entered if the plaintiff fails to come forward with more than a scintilla of evidence. *Senner v. Northcentral Tech. College*, 113 F.3d 750, 757 (7th Cir. 1997).

## IV.  ANALYSIS

Plaintiff alleges that NS violated certain safety standards, including the Track Safety Standards, 49 C.F.R. Part 213, the Safety Appliance Act, 49 U.S.C. § 20301, *et seq.*, and associated federal regulations. *Compl.* ¶ 11.b.  He also asserts that NS failed to provide him a safe place to work in violation of the FELA. *Id.* ¶ 11.a.  NS will address each of these contentions below.

**A.      Plaintiff Has No Evidence That NS Violated the Federal Safety Appliance Act.**

Plaintiff contends that NS violated the federal Safety Appliance Act ("SAA"), apparently because the couplers on the two rail cars failed to couple automatically on impact and therefore required him to go between the cars to get them coupled together.

The SAA permits a railroad to use rail cars on its lines only if they are equipped with "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the [cars]." 49 U.S.C. § 20302(a)(1)(A) (originally enacted as Section 2 of the SAA).

The SAA does not itself create a private right of action, but a railroad employee who alleges that he or she has been injured as a result of an SAA violation may sue under the FELA. *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 825 (7th Cir. 1994).  Because the duty under the SAA is absolute, "the employee must prove only that the statute was violated, and no showing of negligence is required." *Id.* at 825-26.

In this case, however, there is no evidence that NS violated the SAA. Slewed drawbars are commonplace in the railroad industry, and, although plaintiff was required to go between the cars, he did not do so to couple the cars, but rather to prepare them for coupling after the drawbars had bypassed. **Exhibit A** – *Dep. of Kristofer Loy* p. 52, ll. 15-17.

"If, as here, the cars are safely separated and not in motion, readying is not coupling, and does not involve the special coupling risks." *Porter v. Bangor & Aroostook R.R. Co.*, 75 F.3d 70, 71 (1st Cir. 1996) (finding that railroad employee who injured his back while adjusting a drawbar on a coupler that had failed to couple automatically with another car had no SAA cause of action).

In *Norfolk and Western Railway Co. v. Hiles*, 516 U.S. 400 (1996), the Supreme Court of the United States explained the operation of the coupler mechanism:

> Railroad cars in a train are connected by couplers located at both ends of each car. A coupler consists of a knuckle joined the end of a drawbar, which itself is fastened to a housing mechanism on the car. A knuckle is a clamp that interlocks with its mate, just as two cupped hands—placed palms together with the fingertips pointing in opposite directions—interlock when the fingers are curled. When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars. The drawbar extends the knuckle out from the end of the car and is designed to pivot in its housing, allowing the knuckle end some lateral play to prevent moving cars from derailing on a curved track. As a consequence of this lateral movement, drawbars may remain off center when cars are uncoupled. This misalignment, if not corrected, may prevent cars from coupling by allowing the pass by each other. To ensure proper coupling, railroad employees must realign drawbars manually.

*Id.* at 401-02.

In *Hiles*, the respondent-employee argued that a railroad violates the SAA if an employee is required to go between the ends of rail cars to manually adjust a misaligned drawbar. *Id.* at 409. The Supreme Court disagreed, finding that "the text of § 2 [of the SAA] only requires railroads to use a particular kind of coupler with certain attributes." *Id.* at 411. The Court determined that "[a]dopting Hiles' reading of § 2 would require us to hold that a misaligned drawbar, by itself, is a violation of the SAA, and we are quite unwilling to do that." *Id.* at 412.

The Supreme Court rejected the respondent's contention that a misaligned drawbar is a malfunctioning drawbar, finding that misalignment is inevitable and not a violation of the SAA:

> [W]e cannot agree that a misaligned drawbar is, as a matter of law, a malfunctioning drawbar. Historically, misaligned drawbars were an inevitable by-product of the ability to traverse curved track and . . . are part of the normal course of railroad car operations.
> . . .
> Hiles points to not a single instance in which a railroad has been fined for misaligned drawbars. It is not the case that the Government has simply neglected to enforce the penalty provisions of the SAA for nearly 100 years. We think there is a better explanation than that the Government has failed to enforce this particular aspect of the SAA since its inception: A misaligned drawbar simply is not a violation of § 2.

*Id.* at 412-13.

Hiles also argued that Congress's clear intent to protect employees in coupling operations required the railroads to develop a mechanism for automatic realignment of drawbars. *Id.* at 413. The Supreme Court also rejected this argument, holding that "Congress legislated working automatic couplers for employee safety, not employee safety by whatever method a court might deem appropriate." *Id.* at 414.

As the Supreme Court noted in *Hiles*, "certain preliminary steps, such as ensuring that the knuckle is open, are necessary to proper performance of the coupler and . . . a failure to couple will not constitute an SAA violation if the railroad can show that the coupler had not been placed in a position to automatically couple." *Id.* at 410. The Court also observed that the "restriction on failure-to-perform liability logically extends to every step necessary to prepare a nondefective coupler for coupling, . . . including ensuring proper alignment of the drawbar." *Id.*

As in *Hiles*, it is undisputed here that a misaligned drawbar was the cause of the failure to couple. **Exhibit A** – *Dep. of Kristofer Loy* p. 33, ll. 7-16, p. 35, ll. 1-9, and attached Ex. E, p. 6; p. 37, ll. 18-20; p. 45, ll. 2-3. Plaintiff himself concedes that it is not possible for a car to be humped into the Class Yard without the lead knuckle being open, and he has no knowledge of anything

defective on either of the drawbars or knuckles. **Exhibit A** – *Dep. of Kristofer Loy* p. 39, l. 20 to p. 40, l. 13; p. 47, l. 20 to p. 48, l. 4.

Thus, contrary to plaintiff's argument, the misaligned drawbars do not constitute a violation of the SAA under Supreme Court precedent. Where an FELA plaintiff fails to offer any evidence that his or her employer violated the SAA, summary judgment must be granted on the SAA claim. *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298-300 (7th Cir. 1996); *Lisek*, 30 F.3d at 831, 834.

Such is the case here. Plaintiff has offered no evidence that NS violated the SAA, much less evidence that such a violation caused his injury. Accordingly, summary judgment must be granted on his allegation that NS "[v]iolated certain safety standards including . . . the Safety Appliance Act 49 U.S.C. 20301, *et seq.*, and associated federal regulations."

**B.     Plaintiff Has No Evidence That NS Violated the Federal Track Safety Standards.**

Plaintiff's Complaint also asserts that NS violated 49 C.F.R. Part 213, which are the federal Track Safety Standards.

In his deposition, however, plaintiff conceded that he has no knowledge of any track defect:

Q:     You don't have any knowledge of a particular track defect, do you?
A:     Not that I know of, no.

**Exhibit A** – *Dep. of Kristofer Loy* p. 48, l. 25 to p. 49, l. 2.

Accordingly, NS is entitled to summary judgment on plaintiff's Track Safety Standards claim.

**C.     Plaintiff Has No Evidence That NS Violated the Federal Employers' Liability Act.**

Plaintiff also contends that NS is liable for damages under the FELA, which provides in relevant part as follows:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he

>  is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . or other equipment.

45 U.S.C. § 51.

The FELA imposes upon railroads a general duty to provide their employees with a safe place to work. *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 741 (7th Cir. 2005). "The FELA does not, however, render a railroad an insurer of its employees." *Id.* Liability under the FELA arises from negligence, not injury. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)).

An FELA plaintiff must produce evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation. *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998). Under the FELA, "a plaintiff who wishes to demonstrate that a railroad breached its duty must show circumstances that a reasonable person would foresee as creating a potential for harm." *Id.* at 1062 (citation omitted).

While "a relaxed standard of causation applies under the FELA," *Gottshall*, 512 U.S. at 543, neither "the Federal Rules of Civil Procedure [nor] the [district court's] Local Rules governing summary judgment [are] suspended in a FELA case merely because of the plaintiff's lightened burden." *Lisek*, 30 F.3d at 832. An FELA plaintiff "must proffer some evidence of the defendant's negligence to survive summary judgment." *Holbrook*, 414 F.3d at 742.

Here, plaintiff alleges, generally, that there have been problems with the computerized humping equipment at Elkhart Yard: "I am just saying that there was numerous amounts of times that it's been reported that there is roll outs, run throughs, over speeds, and that's not working properly." *Id.* at p. 49, ll. 17-20. But when asked whether he has any evidence that such issues occurred on this occasion, plaintiff responded, "I do not know." *Id.* at p. 49, l. 23.

Plaintiff concedes that he has no evidence that one of the cars was humped too fast and knows nothing about the type of impact involved when the car was humped into the Class Yard.

**Exhibit A** – *Dep. of Kristofer Loy* p. 51, ll. 10-15.  He also admits that he has no evidence that one of the cars was humped into the wrong track.[1]  **Exhibit A** – *Dep. of Kristofer Loy* p. 51, ll. 16-18.

Whether the computerized humping equipment reportedly encountered some type of malfunctions at Elkhart Yard on other unnamed occasions is simply irrelevant, because plaintiff has no evidence whatsoever that such purported issues had anything to do with his mishap.  *See Holbrook*, 414 F.3d at 742-45.

The Seventh Circuit has "consistently declined to infer negligence when [an FELA] plaintiff fails to produce any evidence suggesting that the employer played even the slightest role in bringing about the injury."  *Williams*, 161 F.3d at 1062 (affirming summary judgment); *see also Holbrook*, 414 F.3d at 742-45 (same); *McGinn*, 102 F.3d at 298 (same); *Lisek*, 30 F.3d at 832-34 (same); *Deutsch v. Burlington N. R.R. Co.*, 983 F.2d 741, 744 (7th Cir. 1992) (same).

Notwithstanding the relaxed standard of causation under the FELA, the Court noted in *McGinn* that "[l]eniency has its limits. The plaintiff must still present *some* evidence of negligence." *Id.* at 300.  In this case, plaintiff does not have a scintilla of evidence that NS was negligent.  NS is therefore entitled to summary judgment on his FELA claim.

### V.  CONCLUSION

Accordingly, because the foregoing evidence and authorities show that there is no genuine dispute as to any material fact and the defendant is entitled to judgment as a matter of law, the Court should grant summary judgment in favor of Norfolk Southern Railway Company.

---

[1] Nor do plaintiff's experts describe in their reports any track defects, computer humping equipment malfunctions, over speeds, or humping into the wrong track at the time of the attempted coupling of the rail cars with the slewed drawbars.  They provide no such evidence because none exists: the track inspection reports reveal no defects, and the humping records indicate that the humping was within normal parameters.

Respectfully submitted,

 /s/ David A. Locke
David A. Locke (Attorney No. 18759-53)
John C. Duffey (Attorney No. 4756-79)
STUART & BRANIGIN LLP
300 Main Street, Suite 900, P.O. Box 1010
Lafayette, IN 47902-1010
Telephone: (765) 423-1561
Facsimile: (765) 742-8175
*Attorneys for Norfolk Southern Railway Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2013, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  Parties may access this filing through the Court's CM/ECF system.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system:

George T. Brugess
gbrugess@hoeyfarina.com

James L. Farina
jfarina@hoeyfarina.com

Richard A. Haydu
rhaydu@hoeyfarina.com

 /s/ David A. Locke
David A. Locke

677988.1