UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KRISTOFER LOY,                              )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )        CASE NO. 3:12-CV-00096-TLS
                                            )
NORFOLK SOUTHERN RAILWAY                     )
COMPANY,                                    )
                                            )
                    Defendant.              )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEDUCTIONS AND
WITHHOLDINGS AT TIME OF SATISFACTION OF JUDGMENT**

Pursuant to the Court's Order of March 10, 2016 [Doc. 86], Norfolk Southern Railway

Company ("Norfolk Southern"), by counsel, submits its memorandum in support of deductions and

withholdings at the time of satisfaction of the judgment, as follows:

**I.  CASH ADVANCES**

Between April 20, 2009, and July 8, 2010, the plaintiff, Kristofer Loy, received 15 cash

advances from Norfolk Southern totaling $40,000.00.  At the time of receiving each cash advance,

Mr. Loy signed a receipt that stated, "I agree that the total amount of advance shall be credited

against any settlement made with or any judgment rendered against Norfolk Southern Railway

Company or others on account of this incident."  **Exhibit A – *Receipts for Advances* 1-15.**

In his deposition on February 21, 2013, Mr. Loy was asked if he had repaid any of these

advances, and he responded, "Not yet."  **Exhibit B – *Deposition of Kristofer Loy*, p. 85:4-5.**

Mr. Loy was then asked, "Is it your understanding that those must be repaid?"  *Id.* p. 85:6.  Mr. Loy

responded, under oath: "Oh, yes."  *Id.* p. 85:7.

Accordingly, because Mr. Loy signed 15 receipts in which he agreed that the total amount

of advances must be credited against any judgment, and he testified under oath that he understood

the cash advances must be repaid, the **$40,000.00** in advances that Mr. Loy received from Norfolk Southern between April 20, 2009, and July 8, 2010, must be deducted from the net verdict of $937,500.00.

## II.  RAILROAD RETIREMENT BOARD LIEN

During his time off work, plaintiff received short-term disability benefits from the Railroad Retirement Board (RRB).  He returned to work permanently on August 23, 2012, and the RRB issued a "final" lien as to these benefits in the amount of $28,858.73.  **Exhibit C – *Request for Lien Information*.** The RRB's notice states that "[a]ll settlements and final judgments must be reported to the RRB in writing within 5 days of the date of settlement or judgment."  *Id.*

The RRB's lien was established pursuant to the Railroad Unemployment Insurance Act (RUIA), 45 U.S.C. §§ 351-369.  This statute creates a system of short-term unemployment and disability benefits for railroad workers. U.S. Railroad Retirement Board, *Railroad Retirement Handbook* at 59, 65 (2015), *available at* https://www.rrb.gov/pdf/opa/handbook.pdf.  Specifically, it provides that when an employee is absent from the workplace on account of injury or sickness, he or she is entitled to receive certain benefits directly from the RRB.  *See* 45 U.S.C §§ 352(a)(1)(B).

The RUIA gives the RRB the right to be reimbursed for the benefits it pays under the statute in the event that the employee receives payment for the days of sickness from another source, such as from the employer through an FELA lawsuit.  The RUIA further provides that "[u]pon notice to the person against whom such right . . . exists or is asserted, the [RRB] shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement."  45 U.S.C. § 362(o).

Once the RRB provides the required notice, the employer becomes jointly liable with the employee for the RRB's reimbursement claim.  20 C.F.R. § 341.7(a).  The employer may satisfy this liability in only two ways:  either by "(1) [w]ithholding the amount reimbursable to the Board from

the sum or damages payable to the employee, and subsequently paying the amount to the Board; or (2) "[i]ncluding the . . . Board as a payee on the check or draft along with the employee." *Id.* § 341.7(a)-(b). Further, the RUIA allows a railroad employee to seek waiver or compromise of the RRB's lien, but only from the RRB itself (not from the employer). See 20 C.F.R. §§ 340.10(a), 340.13.

Accordingly, because there can be no dispute that the RRB has provided the required notice and that Norfolk Southern is statutorily required to withhold the amount reimbursable to the Board from the damages payable to Mr. Loy, the lien amount of **$28,858.73** must be deducted from the net verdict of $937,500.00 so that Norfolk Southern can pay this amount to the RRB.

### III.  RAILROAD RETIREMENT TAX ACT AND MEDICARE WITHHOLDINGS

Federal substantive law governs all aspects of the plaintiff's claim under the FELA. *Chesapeake & Ohio Ry. v. Kelly*, 241 U.S. 491 (1916); *St. Louis Southwestern Ry. v. Dickerson*, 470 U.S. 409 (1985). Federal railroad law imposes payroll taxes on compensation, which is defined to include payments for time lost by virtue of a workplace injury. Under relevant federal regulations, Norfolk Southern is required to report payment for time lost and withhold plaintiff's applicable RRB and Medicare tax obligations due on the judgment when satisfied and remit the taxes directly to the U.S. Treasury.[1] It is important to note that, despite these regulations, an award to plaintiff is not subject to federal or state income taxes.

The payroll taxes owed under the Internal Revenue Code fund the retirement benefits for railroad employees and are governed by the Railroad Retirement Tax Act. These taxes are measured by the "compensation" received by the employee for services performed. Compensation is a defined term in the Railroad Retirement Tax Act, subject to certain enumerated exceptions.

---

[1] Norfolk Southern is also required to pay its own share of taxes due on those amounts. The Norfolk Southern share is not an offset of plaintiff's award. The tax is withheld up to the maximum rates in effect at the time of satisfaction and only for the year in which payment is made.

The statutory definition is broad and reaches payments for time lost including payments for lost wages in an FELA action. This definition is confirmed by the sister statute—the Railroad Retirement Act—and the IRS's implementing regulations. Congress included specific and detailed exemptions to the statutory term compensation but did not exempt payment for time lost. Thus, there are no grounds for excluding the payments for time lost by virtue of a workplace injury.

Based on counsel's statements during the telephonic status conference on March 10, 2016, Norfolk Southern anticipates that plaintiff will argue that the jury award is excludable under Section 104(a) of the Internal Revenue Code. But the exclusion in Section 104(a) is not part of the Railroad Retirement Tax Act. The exclusion in Section 104(a) pertains to a different statutory definition ("gross income") for purposes of a different tax, *i.e.*, income tax.

Significantly, Section 104(a) is not among the enumerated exceptions to compensation recognized in the Railroad Retirement Tax Act. Congress's deliberate decision to use different terms with different meanings reinforces the conclusion that Congress intended the statutes to have different scopes. Even if the statutory is ambiguous, the IRS has responsibility for both statutes, and its regulation clearly encompasses payments for time lost including FELA judgments. Various courts have found that the IRS interpretation is reasonable. Accordingly, this Court should order that the FELA judgment be reduced to reflect plaintiff's share of taxes owed under the Railroad Retirement Tax Act and to be paid by Norfolk Southern to the IRS.

### A.    Railroad Employees Are Subject to Distinct Retirement Benefits, Funded by Payroll Taxes

As noted above, this case does not concern plaintiff's income taxes, but rather taxes that both he and the railroad must pay to sustain the Railroad Retirement system in which he participates. Railroad employees are subject to a distinct and separate retirement system from retirement systems covering most other employees. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573 (1979).

In the 1930s, Congress established the Railroad Retirement system, which remains separate from Social Security today. *See* 42 U.S.C. § 410(a)(9). The legislation to manage this system consists primarily of two federal statutes: the Railroad Retirement Act represents "the expenditure system of the coin," and the "Railroad Retirement Tax Act is the revenue side."[2] *Standard Office Bldg. Corp. v. United States*, 819 F.2d 1371, 1373 (7th Cir. 1987).

The Railroad Retirement Act (RRA) sets the benefit levels. A central feature of the RRA, as it exists today, is its division of retirement benefits into two distinct components or "tiers." *Hisquierdo*, 439 U.S. at 574. "Tier I benefits take the place of Social Security, from which railway workers are exempt, and Tier II benefits are similar to those that workers would receive from a private multi-employer pension fund." *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 522 (6th Cir. 2009). The RRA benefits are computed based on the length of time for which the employee receives "compensation" from the employer.[3]

The Railroad Retirement Tax Act (RRTA) sets the payroll taxes to fund these benefits. "The RRTA imposes a dual tax on railroad employers and employees that is used to fund annuities for retired railroad workers." *Hance*, 571 F.3d at 522; *Hisquierdo*, 439 U.S. at 574. The RRTA taxes are divided into Tier I and Tier II taxes, and both are based on the employee's "compensation." *See* 26 U.S.C. § 3201 (employee rate of tax); 26 U.S.C. § 3221 (employer rate of tax).[4] The railroad employer is required to withhold from its employees' wages, and pay over to the

---

[2] In its original form, the Railroad Retirement Tax Act was known as the Carriers Taxing Act, 50 Stat. 435 (1937). Since 1946 it has been called the Railroad Retirement Tax Act and is incorporated in the Internal Revenue Code at Chapter 22.

[3] *See, e.g.*, 45 U.S.C. § 231a(a)(1) (describing eligibility for both retirement and disability benefits); 45 U.S.C. § 231a(b) (describing eligibility for supplemental retirement benefits).

[4] The Tier I benefits are taxed in the same manner as social security benefits, with both the employee and employer taxed at equal rates. 26 U.S.C. §§ 3201(a), 3221(a). Tier II benefits are funded largely from employer contributions, with a smaller portion contributed by the employee. 26 U.S.C. §§ 3201(b), 3221(b).

Internal Revenue Service, the payroll taxes that are imposed on the employees.  26 U.S.C. § 3202.

These are commonly referred to as "withholding taxes."  Once the employer pays the employee's

share of taxes to the IRS, the RRTA protects the employer from being forced to pay that amount a

second time to the employee.  *See* 26 U.S.C. § 3202(b); 26 C.F.R. § 21.3202-1(e).

The railroad employer in essence serves as a collection agent for the government with

respect to these amounts, and the employee does not take the money home.  26 U.S.C. § 7501;

26 C.F.R. § 31.3202-1; *Chicago Milwaukee Corp. v. United States*, 141 F.3d 1112, 1114 (Fed.

Cir. 1998).  Failure to withhold the taxes is a serious offense under federal law, subjecting the

railroad to fines and potential criminal liability.  *See* 26 U.S.C. § 6672.

These statutes are administered by two federal agencies. The Railroad Retirement Board

(RRB), an independent agency within the executive branch, administers the benefit program under

the RRA.  *See* 45 U.S.C. § 231f.  The Internal Revenue Service is the agency assigned to the

responsibility of collecting revenues under the RRTA.  26 U.S.C. § 7801.  The RRB works in

coordination with the IRS to ensure that railroad employers are properly paying the taxes that fund

the benefit programs.  45 U.S.C. § 231f(b)(6) (RRB has power to require all employers to furnish

such information and records as shall be necessary for the administration of the Act); 45 U.S.C.

§ 231h (RRB may require employers to file compensation reports).

### B.     The FELA Judgment Includes Compensation for Time Lost on Account of an Injury, Triggering Payroll Taxes

Apart from the status of the FELA award for purposes of federal income taxes, there is no

doubt that the award for lost wages falls within the definition of compensation for purposes of the

RRTA.  This is clear from the plain language of the statute and is confirmed by the statutory structure

and purposes, the implementing regulations, and the case law.  Because the definition of compensation

is controlling for the imposition of the RRTA payroll taxes, the analysis begins and ends there.

As noted above, the RRTA imposes payroll taxes on "compensation" received by an employee with respect to employment. 26 U.S.C. §§ 3201, 3221. "The employee tax is measured by the amount of compensation received for services rendered as an employee." 26 C.F.R. § 31.3201-1. The taxes are imposed when the compensation is paid. 26 U.S.C. § 3202(a). Had the plaintiff actually worked for Norfolk Southern during the periods for which he sought past and future lost wages as a result of his injury, his paid compensation indisputably would have been subject to the RRTA withholding taxes.

It is clear that compensation encompasses pay for time lost due to the workplace injury as well. The RRTA defines "compensation" in broad terms. "Compensation is any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e). This term is defined broadly to further the policies behind the retirement program and to ensure adequate funding for the benefits. *See Gerbec v. United States*, 164 F.3d 1015, 1026 (6th Cir. 1999) ("The phrase 'remuneration for employment' as it appears in § 3121 should be interpreted broadly.").

The plaintiff in this case sought past wages for time lost between March 2009 and March 2011 and between May 2012 and August 2012, as well as future lost wages, so the judgment unquestionably includes money remuneration for employment services. Thus, the award plainly falls within the RRTA's broad definition of compensation. *See Heckman v. BNSF Ry. Co.*, 837 N.W.2d 532, 540 (Neb. 2013) ("[W]e conclude that time lost is compensation that is subject to taxation [under the RRTA].").

The statutory structure confirms what the plain text indicates. When Congress wanted to limit this broadly defined term, it said so explicitly. Section 3231(e) of the RRTA, which defines "compensation" as "any form of money remuneration," specifically exempts certain classes of payments from the definition of compensation. 26 U.S.C. §§ 3231(e)(1)(I) – (iv). Section 3231 also contains a number of more general exclusions from "compensation," some of which include benefits received from the RRB. 26 U.S.C. §§ 3231(e)(2) – (4).

-7-

Section 3231 makes no express exemption for pay for time lost.  Congress, in other words, knew how to limit the definition of compensation, but chose not to exclude pay for time lost due to a workplace injury.  This choice must be respected.  *See Elgin v. Department of Treasury*, 132 S. Ct. 2126, 2134-35 (2012) (noting that when "Congress declines[s] to include an exception," this "indicates that Congress intended no such exception").

Congress had good reason for including time lost due to personal injury in compensation subject to RRTA taxes.  Under the companion statute—the Railroad Retirement Act—the employee's benefits are in part based on the time covered by the FELA award.  *See* 45 U.S.C. § 231a.  The RRA is explicit in defining compensation to include payment for time lost on account of personal injury. The RRA defines "compensation" to "include[ ] remuneration paid for time lost as an employee."  45 U.S.C. § 231(h)(1).  "An employee shall be deemed to be paid 'for time lost' the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, *including absence on account of personal injury* . . . ."  45 U.S.C. § 231(h)(2) (emphasis added).[5]

Thus, as various circuit courts of appeals have found, the RRA's definition of "compensation" encompasses FELA awards for lost wages due to a workplace injury.  *See Norton v. Railroad Retirement Bd.*, 69 F.3d 282, 283 (8th Cir. 1995); *Capovilla v. Railroad Retirement Bd.*, 924 F.2d 885, 887-88 (9th Cir. 1991); *Jacques v. United States R.R. Retirement Bd.*, 736 F.2d 34, 39-41 (2d Cir. 1984).

The RRA and RRTA should be read in *pari materia*, "as if they were one law."  *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (finding that "statutes addressing the same subject matter generally should be read 'as if they were one law'"); *see also Sorensen v. Secretary of*

---

[5] The RRA, RRTA, and the RUIA are all consistent and clear in their treatment of pay for time lost. For example, under the RUIA and regulations issued thereunder, pay for time lost is considered creditable compensation in the same manner as under the RRA. As explained by Chief Counsel to the RRB, Steven A. Bartholow, in RRB Legal Opinion L-2010-04, RRB regulations define pay for time lost as creditable compensation, including pay received for time lost due to personal injuries.  *See* U.S. Railroad Retirement Board Legal Opinion L-2010-04 at 2 (June 23, 2010), *available at* https://www.rrb.gov/pdf/blaw/L-2010-04.pdf.

*Treasury*, 475 U.S. 851, 860 (1986).[6]  In fact, courts often look to one statute when interpreting the other.  *See Atlantic Land & Improvement Co. v. United States*, 790 F.2d 853, 856 & n.5 (11th Cir. 1986).  This holistic approach is especially appropriate here, where the two statutes represent different sides of the same coin.  *See Standard Office Bldg.*, 819 F.2d at 1373 (finding that RRA represents "the expenditure side of the coin," and RRTA "is the revenue side").

Classification of the award as "compensation" affects the employee because it triggers benefits under the RRA.  *See Heckman*, 837 N.W.2d at 542.  The RRTA's legislative history shows that the employee union's representative was aware that taxes would be imposed on "pay for time lost" but favored the definition anyway because it would "increase the creditable months of service of railroad workers."[7]  Thus, the employee increases his eligibility for retirement benefits by treating the FELA award as compensation under the RRA.[8]

Giving the same meaning to "compensation" under the RRTA and the RRA provides harmony and stability by ensuring adequate funding for the retirement benefits the employees will receive.  *See Hance*, 571 F.3d at 542 (citing RRA in holding that pay for time lost is taxable under RRTA); *Standard Office Bldg.*, 819 F.2d at 1376.  Any other result would run contrary to the retirement scheme's purpose.

The language, structure, and purpose of the RRTA, along with its relationship to the RRA, are sufficient to establish that compensation under the RRTA encompasses pay for time lost.  This

---

[6] *See also* U.S. Railroad Retirement Board Legal Opinion L-2005-25 at 2 (Dec. 2, 2005) ("The Office has long recognized that in view of the substantial similarity between the definitions of compensation under the RRA and RRTA, it is desirable, absent controlling language to the contrary, to treat payments to employees by employers in the same fashion under both statutes."), *available at* http://www.rrb.gov/pdf/blaw/L-05-25.pdf (last visited Mar. 14, 2016).

[7] Statement by Murray W. Latimer on behalf of the Railway Labor Executives Association before the Subcommittee of the Senate Committee on Interstate Commerce on S.293.

[8] *See, e.g.*, *Jacques*, 736 F.2d at 39-41 (where plaintiff's FELA complaint alleged loss of earnings due to injury, the settlement award entered into was considered to be pay for time lost, resulting in five months missed from work being counted as creditable compensation, thereby qualifying employee for a disability annuity under the RRA).

conclusion is confirmed by authoritative sources. The two federal agencies charged with administering the statutes have looked at this specific issue and reached the same conclusion. The IRS issued a regulation defining compensation for RRTA purposes as including pay for time lost. "The term compensation is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is absent from the active service of the employer . . . [including] pay for time lost." 26 C.F.R. § 31.3231(e)-1(1)(4).

The IRS has followed through with its position by repeatedly filing briefs as *amicus curiae* in the appellate courts on this issue.[9] *See, e.g.*, *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 55-59 (2011); *see also Phillips v. Chicago Cent. & Pac. R.R. Co.*, 853 N.W.2d 636, 650 (Iowa 2014) ("We find the Treasury Department's interpretation reasonable as applied to the definition of compensation [under the RRTA]."); *Heckman*, 837 N.W.2d at 540; IRS Instructions for Form CT-1, Employer's Annual Railroad Retirement Tax Return, Cat. No. 16005H (2015), at 2 (defining compensation to include "payment for time lost as an employee"), *available at* https://www.irs.gov/pub/irs-pdf/ict1.pdf.

Likewise, the RRB has "consistently held that the RRTA's definition of compensation includes time lost." *Phillips*, 853 N.W.2d at 651. For example, a 2011 RRB Information Notice states that "[a]s with all compensation, pay for time lost," whether arising out of a FELA lawsuit or settlement, "is subject to taxation under the Railroad Retirement Tax Act at the tier I and tier II rates and annual maximum earnings bases in effect when payment is made." U.S. Railroad Retirement Board, *Railroad Retirement Service Credits and Pay for Time Lost* at 1, 3 (May 2011),

---

[9] *See, e.g.*, Brief of United States as Amicus Curiae in support of Appellee and in support of Affirmance, filed in *Phillips v. Chicago Central & Pacific Railroad Co.*, Iowa Supreme Court, Case No. 13-0729, *available at* 2013 WL 11262292; Brief of United States as Amicus Curiae in support of Appellant and in support of Reversal, filed in *Mickey v. BNSF Ry. Co.*, Missouri Court of Appeals, Case NO. ED98647, *available at* 2013 WL 210157; Brief of United States as Amicus Curiae in support of Appellant and in support of Reversal, filed in *Heckman v. Burlington Northern Santa Fe R.R. Co.*, Supreme Court of Nebraska, No. S-12-000335, *available at* 2013 WL 1809429.

*available at* https://www.rrb.gov/pdf/opa/mmo1105.pdf; *see also* U.S. Railroad Retirement Board, *Pay for Time Lost from Regular Railroad Employment* at 5 (1996) (stating that "an employer is required to withhold and pay the employment taxes due on pay for time lost"), *available at* https://www.rrb.gov/pdf/PandS/ib4.pdf; *id.* at 2 (explaining that pay for time lost includes a personal injury award allocating a portion of the damages as lost wages); *id.* at 8 (compensation for RRTA purposes includes "pay for time lost").  The RRB's interpretation is entitled to deference.  *See Norton*, 69 F.3d at 283; *see also Phillips*, 853 N.W.2d at 650 (deferring to RRB's interpretation of compensation to include FELA awards and thus triggering RRTA taxes).

The RRB consistently follows these guidelines.  In RRB Legal Opinion L-2010-04, the Board stated that satisfaction of FELA judgments which include compensation for Past and/or future wage lost must be reported to the Board and allocated to the period of time the employee missed work <u>and</u> to future months, and the employer railroad must withhold applicable Tier I and Tier II taxes and the employee's medical tax obligations from the payment of any judgment.  U.S. Railroad Retirement Board Legal Opinion L-2010-04 at 2 (June 23, 2010), *available at* https://www.rrb.gov/pdf/blaw/L-2010-04.pdf; *see also* U.S. Railroad Retirement Board Legal Opinion L-87-91 (July 1, 1987) (**Exhibit D**).

Not surprisingly, numerous courts have followed the interpretation of the two federal agencies.  These courts held that a payment for lost wages in an FELA judgment or settlement is subject to the withholding taxes under the RRTA.  *Phillips v. Chicago Cent. & Pac. R.R. Co.*, 853 N.W.2d 636, 650-51 (Iowa 2014) (concluding "that the definition of compensation to include time lost as interpreted by the Treasury Department in 26 C.F.R. § 31.3231(e)–1 is reasonable, and thus, time lost is properly taxed as compensation under the RRTA"); *Heckman v. BNSF Ry. Co.*, 837 N.W.2d 532, 539-42 (Neb. 2013) ("Based on the definition of compensation as stated in the RRA and RRTA and the agencies' interpretations found in federal regulations, we conclude that time lost

is compensation that is subject to taxation."); *Cheetham v. CSX Transp.*, No. 3:06-cv-704, 2012 WL 1424168 (M.D. Fla. Feb. 13, 2012) (noting that RRTA taxes must be withheld from compensation and concluding that FMLA likewise required railroad to withhold employment taxes from judgment), *adopted at* 2012 WL 2571247 (M.D. Fla. Mar. 7, 2012); *Crawford v. Norfolk S. Ry. Co.*, No. 2012-CP-10-06270, at 4-5 (S.C. Cir. Ct. Sept. 24, 2015) (**Exhibit E**) (granting motion to amend judgment to withhold employee-funded portion of RRTA payroll taxes pursuant to 45 U.S.C. § 231(h)(2)); *Everett v. Norfolk S. Ry. Co.*, No. 06 EV 000797 (Ga. Tr. Ct. Jan. 13, 2014) (**Exhibit F**) (granting motion for satisfaction and discharge of judgment based on deduction of RRTA payroll taxes pursuant to 45 U.S.C. § 231(h)(2)); *Vodden v. BNSF Ry. Co.*, No. 27-CV-11-18376, 2012 WL 7150849, at 4-5 (Minn. Dist. Ct. Dec. 12, 2012) (granting railroad's offset motion and ordering that payroll taxes be remitted to IRS); *Nielsen v. BNSF Ry. Co.*, Case No. 0807-10580 (Or. Cir. Ct. Mar. 5, 2012) (**Exhibit G**) (granting motion to offset plaintiff's portion of payroll taxes against FELA judgment).

Courts that have reached a different result have made the mistake of detaching the definition of taxable "compensation" from the definition of creditable "compensation." *See Marlin v. BNSF Ry. Co.*, No. 4:14-cv-00098, 2016 WL 825145 (S.D. Iowa Jan. 29, 2016); *Cowden v. BNSF Ry. Co.*, No. 4:08CV1534, 2014 WL 3096867 (E.D. Mo. July 7, 2014); *Mickey v. BNSF Ry. Co.*, 437 S.W.3d 207 (Mo. 2014).

According to those courts, because the RRTA's broad definition of "compensation" does not specifically mention pay for time lost, it is not taxable under the RRTA, even though it is credited to the employee under the RRA. If this view were adopted by other courts, it would have profound and negative consequences for the carefully crafted railroad retirement program.

The sustainability of a government benefits program depends on sufficient funding of that program. If benefit claims exceed funding, the system collapses, leaving its intended beneficiaries (here, railroad workers) unprotected. But that is the inevitable result under these courts' view. *See*

*United States v. Silk*, 331 U.S. 704, 710-11 (1947) ("The relationship between the tax sections and the benefits sections [of the social security laws] emphasizes the underlying purpose of the legislation—the protection of its beneficiaries from some of the hardships of existence.").

According to these courts, a railroad employee is not required to contribute (through taxes) a portion of his or her FELA award to the fund from which railroad retirement benefits are paid. Nonetheless, the award is treated as compensation under the RRA and increases the benefits that the employee will be entitled to receive out of that fund. These holdings frustrate Congress's intent to adequately fund the railroad retirement program.

The legislative history of the RRTA amendments shows Congress's intent to promote consistent administration of the RRA and RRTA, and emphasizes the importance of adequately funding the railroad retirement program. The holdings in *Marlin*, *Cowden*, and *Mickey* frustrate both of these purposes. The 1970 version of the RRTA defined "compensation" like the RRA as "any form of money remuneration earned by an individual for services rendered as an employee to one or more employers . . . , *including remuneration paid for time lost*." 26 U.S.C. § 3231(e)(1) (1970) (emphasis added).

The 1970 RRTA further provided that "[a]n employee shall be deemed to be paid 'for time lost' the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, *including absence on account of personal injury*." Id. § 3231(e)(2) (1970) (emphasis added).

In 1975, Congress amended the first part of that definition to state in more general terms that "[t]he term 'compensation' means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1) (Supp. 1975). Congress retained the language in the second part of the definition that referred to time lost, including time lost on account of personal injury. In 1983, Congress removed the remaining references to time lost. 26 U.S.C. § 3231(e) (Supp. II 1984).

The legislative history for the 1975 and 1983 RRTA amendments does not mention the removal of references to "time lost."  This alone is compelling evidence that Congress did not intend to fundamentally redefine "compensation" to exempt pay for time lost (which had been taxable since the RRTA was first enacted).  *See Chicago Milwaukee Corp. v. United States*, 35 Fed. Cl. 447, 455 n.6 (Fed. Cl. Ct. 1996) ("Nothing in the legislative history indicates that Congress intended to change the substantive definition of 'compensation.'"); *see also United States v. O'Brien*, 560 U.S. 218, 231 (2010) (courts should presume that "Congress does not enact substantive changes *sub silentio*."); *Director of Revenue v. CoBank ACB*, 531 U.S. 316, 323-24 (2001) (rejecting argument that deletion of language changed the government's longstanding authority to tax certain entities).

More importantly, the *Marlin*, *Cowden*, and *Mickey* decisions are inconsistent with the purpose of the RRTA amendments.  Congress first amended the statute in 1975 to make RRTA taxation more consistent with the way that "compensation" was credited under the RRA, not less so. See 121 Cong. Record 26759 (Aug. 1, 1975) (Sen. Long explaining that the amendment overturned a revenue ruling that "provide[d] a taxing basis which [wa]s inconsistent with the basis under which the Railroad Retirement Board credits wages to employee accounts for benefit computation purposes. This amendment will make the two procedures consistent."); 121 Cong. Record 27014 (Aug. 1, 1975) (Rep. Corman offering similar explanation).

The 1983 amendments to the RRTA's definition of "compensation" were "technical and conforming amendment[s]" designed to accommodate the 1975 changes. H.R. Rep. No. 98-30 (1983), *reprinted in* 1983 U.S.C.C.A.N. 729, 823.  Those amendments were enacted together with more substantial changes to the railroad retirement program as a whole that were designed "to improve the financial status of the railroad retirement system [and] to assure the future solvency of the system and to preclude the need for substantial benefit reduction that would otherwise be required."  H.R. Rep. No. 98-30 (II), at 813 (1983).

-14-

The decisions in the *Marlin*, *Cowden*, and *Mickey* cases, however, would do precisely the opposite, as they would increase benefit entitlements, without providing a corresponding increase in the funding necessary to pay those benefits. *Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 394 (1982) ("Since the amendments to the original legislation . . . consistently have strengthened th[e] regulatory scheme, the elimination of a significant enforcement tool would clash with this legislative pattern. We therefore may not simply assume that Congress silently withdrew the pre-existing private remedy[.]").

For all the foregoing reasons, the decisions of the courts that have adopted the interpretation of the two federal agencies charged with administering the RRTA (the IRS) and the RRA (the RRB)—that a payment for lost wages in an FELA judgment is subject to the withholding taxes under the RRTA—should be followed.

## C.     Because Plaintiff Sought Lost Wages, Federal Law Treats the Entire Verdict as Pay for Time Lost for RRTA Tax Purposes

Because plaintiff sought past wages for time lost between March 2009 and March 2011 and between May 2012 and August 2012, as well as future lost wages, the question then becomes how federal law treats the general verdict for RRTA tax purposes. The RRA states that "[i]f payment is made by an employer with respect to personal injury and includes pay for time lost, *the total payment shall be deemed to be paid for time lost*" unless the payment is specifically apportioned to other factors. 45 U.S.C. § 231(b)(2) (emphasis added).[10]

This requirement applies equally under the RRTA for the same reasons the RRA's definition of "compensation" (as including pay for time lost) applies under the RRTA. If an entire FELA award is treated as pay for time lost for purposes of creditable months of service under the RRA,

---

[10] *See also Eversole v. Consolidated Rail Corp.*, 551 N.E.2d 846, 855 (Ind. Ct. App. 1990) ("[E]vidence of lost wages was placed before the jury. Absent a contrary indication, it is reasonable to assume the jury considered this evidence in calculating its damage award.").

then the entire award also should be treated as pay for time lost for purposes of calculating the employee's taxable compensation under the RRTA. *See Phillips*, 853 N.W.2d at 644 (finding "no logical reason to conclude that . . . Congress intended a different rule to apply for purposes of tax withholding under the RRTA."); *see also Heckman*, 837 N.W.2d at 537-38.

As discussed at length above, Norfolk Southern is required to withhold these payroll taxes and remit them directly to the U.S. Treasury, and failure to do so is a serious offense under federal law that subjects Norfolk Southern to fines and potential criminal liability. *See* 26 U.S.C. § 6672.

If plaintiff were permitted to avoid these payroll taxes, not only would Norfolk Southern be forced to pay the same amounts twice, but plaintiff would not be required to pay them at all. Further, it is incongruous that an employee would receive credit for the time lost via the RRA benefit but pay no taxes under the RRTA for the same time period.

Fundamental fairness prohibits such a windfall. *See Noel v. New York State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 215 (2d Cir. 2012) ("The withheld taxes were not retained by the [employer] but were paid over for [the employee's] benefit. The district court's requirement that the [employer] again pay that amount to [the employee] constituted an inappropriate hit to the public fisc and an undeserved windfall to him."); *Cheetham*, 2012 WL 1424168, at *8 ("[T]ax authorities must receive their due, and . . . neither plaintiffs nor defendants should receive windfalls.") (citation omitted).

### D.    Internal Revenue Section 104 Does Not Change the Result

In light of the statutory language and agency interpretations, FELA judgments that include lost pay clearly fall within the definition of "compensation" under the RRTA. The RRTA tax is imposed on "compensation"—a defined term in the RRTA—and railroad employers are required to withhold and remit the employee's portion of the taxes to the IRS. 26 U.S.C. §§ 3201, 3231(e).

-16-

Based on counsel's statements during the telephonic status conference on March 10, 2016, Norfolk Southern anticipates that plaintiff will argue that the jury award is excludable under Section 104(a) of the Internal Revenue Code. However, the exclusion in Section 104(a) is not part of the Railroad Retirement Tax Act and does not alter the conclusion that Norfolk Southern is required to withhold and remit Mr. Loy's portion of the payroll taxes to the IRS.

Beginning with the obvious, Section 104 addresses exemptions for a different statutory term. Section 104 is found in Part III of Chapter B of the Internal Revenue Code, titled "Items Specifically Excluded from Gross Income." Thus, Section 104 excludes personal injury damages from the definition of "gross income." *See* 26 U.S.C. § 104(a). However, the definition of "compensation" in the RRTA is controlling here. 26 U.S.C. §§ 3201, 3231(e). "The use of different terms within related statutes generally implies that different meanings were intended." *United States v. Bean*, 537 U.S. 71, 76 n.4 (2002) (quoting 2A NORMAN SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)).

The deliberate use of the term "compensation" in the RRTA—along with the enumeration of specific exceptions to that term—reflects that Congress intended this term to have a different meaning than gross income. A court has a "duty to give effect, where possible, to every word of a statute." *Duncan v. Walker*, 533 U.S. 167, 167 (2001); *see also Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 480 (1992) ("The plain meaning . . . cannot be altered by a somewhat different term in another part of the statute."). Furthermore, even if gross income is broader than compensation, "it is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992); *Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 47 (8th Cir. 1977).

Moreover, Congress has already addressed the interaction between the definitional terms. In the RRTA itself, Congress expressly incorporated certain exclusions applicable to gross income

-17-

into the definition of compensation.  *See, e.g.*, 26 U.S.C. §§ 3231(e)(10) – (11) (directing that the term compensation will not include certain health care payments excluded from gross income under Section 106).[11]  However, Congress did not designate Section 104 as an exclusion that would apply to the RRTA's definition of compensation.  "The fact that . . . Congress provided specific exemptions . . . is evidence that Congress did not intend to recognize further exemptions . . . ."  *United States v. Bess*, 357 U.S. 51, 57 (1958).  Section 3231(e) is therefore unambiguous in indicating that Congress intended to make only those exemptions specifically mentioned.  There is no ambiguity in the relationship between compensation and gross income.

Even if there were an ambiguity, however, the IRS's interpretation—expressed in a formal regulation—would be entitled to significant deference.  *See Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  The *Chevron* rule is intended to honor a presumed congressional intention to delegate to a federal agency the policy-making authority to interpret an ambiguous statute.  Thus, under *Chevron*, when the language in a statute has a range of meanings, the agency rather than the courts is entitled to choose which meaning best effectuates the objectives of the statute.  *See Chevron*, 467 U.S. at 844-45, 865-66.  Absent a clear command from Congress, the interrelationship between two federal statutes is a quintessential policy judgment best left to the agency.

Here, the IRS is charged with administering and enforcing both the RRTA and the Internal Revenue Code.  The IRS has promulgated a regulation defining compensation for RRTA tax purposes to include pay for time lost.  26 C.F.R. § 31.3231(e)-1(a)(4).  The IRS has also held in two Revenue Rulings that Section 104 has no bearing on the RRTA tax treatment for time lost.  In

---

[11] *See, e.g.*, 26 U.S.C. § 3231(e)(5), (§ 74(c) (employee achievement awards) (§ 108(f)(4) - amounts received under federal or state student loan forgiveness programs) (§ 117 - qualified scholarships) (§ 132 - fringe benefits); *id.* § 3231(e)(6), (§ 127 - employer-provided educational assistance); *id.* § 3231(e)(9), (§ 119 - value of meals and lodging furnished by employer); *id.* § 3231(e)(10), (§ 106(b) - medical savings account contributions); *id.* § 3231(e)(11), (§ 106(d) - employer contributions to health savings accounts); *id.* § 3231(e)(f), (§§ 422(b) and 423(b) - qualified stock options).

Revenue Ruling 61-1, a railroad employee sought advice on the federal income tax consequences of the settlement of his FELA claim.  *See* Rev. Rul. 61-1, 1961-1 C.B. 14, 1961 WL 12630 (Jan. 1961). After settling the FELA claim with his railroad employer, the employee "elected, by separate agreement, to apportion part of the amount to 'time lost' in order to receive railroad retirement credit for the time he was incapacitated."  *Id.*

The IRS distinguished federal income tax liability from the employee's obligation to pay taxes for the same amounts under the RRTA.  "The fact that in this case 'time lost payments' constitute compensation for the purposes of taxes imposed by the Railroad Retirement Tax Act is not controlling for Federal income tax purposes."  *Id.*  Thus, the IRS found that the employee was not required to pay income taxes on the settlement amounts of his FELA claim pursuant to Section 104(a)(2) although that same amount was taxable as pay for time lost under the RRTA.  *Id.*; *see also* IRS Rev. Rul. 85-97, 1985-2 C.B. 5, 1985 WL 287177 (July 1985) (explaining that Rev. Rul. 61-1 "states that the fact that the 'time lost payments' constituted compensation for purposes of the taxes imposed by the Railroad Retirement Tax Act does not preclude the application of the exclusion from gross income under section 104(a)(2)").

The IRS, in other words, recognized that *income* taxes are distinct from *employment* taxes under the RRTA.  Thus, even if the FELA judgment is excluded from gross income for purposes of federal income taxes, an award of lost wages still falls within the definition of compensation and is subject to RRTA taxes.  The IRS's interpretation is reviewed for reasonableness, and there is no question that the interpretation is reasonable.  *See Phillips*, 853 N.W.2d at 650-52; *Heckman*, 837 N.W.2d at 540.

Courts that have reached a different result (in the *Marlin*, *Cowden*, and *Mickey* decisions) made the mistake of conflating "income" with "gross income" and thereby erroneously concluded that Section 104's exclusion of personal injury awards from "gross income" means that those awards are not "income" in the first place.

-19-

It is hornbook federal tax law that "income" and "gross income" are distinct concepts. "Income" is any payment that falls within Congress's constitutional power to tax. *See Commissioner of Internal Revenue v. Glenshaw Glass Co.*, 348 U.S. 426, 429-30 (1955). By contrast, "gross income" is income that Congress has decided—as a matter of public policy—should be taxed. *See United States v. Burke*, 504 U.S. 229, 233 (1992) (observing that definition of "gross income" under 26 U.S.C. § 61(a) includes all income "subject only to the exclusions specifically enumerated elsewhere in the Code").

Therefore, the determination of whether a payment is taxed under the income tax laws consists of two steps: First, is the payment income (*i.e.*, *could* Congress tax it)? Second, if it is income, is it also included in gross income (*i.e.*, *did* Congress decide to tax it)? *See Central Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21, 24 (1978); *Commissioner of Internal Revenue v. Kowalski*, 434 U.S. 77, 82-83 (1977).

There is no question that personal injury awards are income. Congress's power to tax extends to all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Glenshaw Glass*, 348 U.S. at 431. Here, plaintiff is better off financially than he was before he received his FELA award, and thus, he has realized an accession to wealth. *See* 1 BITTKER & LOKKEN: FEDERAL TAXATION OF INCOME, ESTATES, AND GIFTS at ¶ 5.6 (2d/3d ed. 1993-2015) ("Taxing a recovery for personal injury . . . is not significantly different from taxing wages and salaries. . . . [T]his analogy implies that compensation for such a wrong is an accession to the taxpayer's wealth that must be included in gross income unless Congress chooses to grant an explicit exemption.").[12] The fact that Congress made the policy decision to exclude most personal injury awards from gross income does not change the fact that they are income.

---

[12] Indeed, personal injury awards were taxed until Congress decided—as a matter of public policy—to change their tax treatment. *See* Treas. Dec. 2135, 17 Treas. Dec. Int. Rev. 39, 42 (Jan. 23, 1915); Treas. Dec. 2690, 20 Treas. Dec. Int. Rev. 126, 130 (Jan. 2, 1918).

Indeed, the U.S. Supreme Court has explicitly rejected the reasoning upon which the *Mickey* court relied: that a statutory exclusion from gross income "alters the character of the [payment] so that it is no longer . . . income." *See Gitlitz v. Commissioner of Internal Revenue*, 531 U.S. 206, 213 (2001), *superseded by statute on other grounds*, 26 U.S.C. § 108(d)(7)(A). In *Gitlitz*, the Court held that although Section 108 excludes amounts realized through the discharge of indebtedness from "gross income" when the taxpayer is bankrupt or insolvent, those amounts nonetheless are "income." The Court explained:

> Section 108(a) simply does not say that discharge of indebtedness ceases to be an *item of income* . . . . Instead, it provides only that discharge of indebtedness ceases to be *included in gross income*. Not all items of income are included in gross income . . . , so mere exclusion of an amount from gross income does not imply that the amount ceases to be an item of income.

*Id.* (emphases in original).

The Court further reasoned that "[i]f discharge of indebtedness of insolvent entities were not actually 'income,' there would be no need to provide an exception to its inclusion in gross income; quite simply, if discharge of indebtedness of an insolvent entity were not 'income,' it would necessarily not be included in gross income." *Id.* at 214.

The same rationale applies here. The fact that Congress excluded personal injury awards from gross income necessarily means that those awards are income that otherwise would be subject to personal income tax. If this were not the case, there would be no need for the exclusion in Section 104. The *Mickey* court's failure to recognize this fundamental tenet of tax law led it to error.

Moreover, if *Mickey* (and *Cowden* and *Marlin*) were correct that payments excluded from gross income are not income at all, they could never be taxed under the RRTA. See 26 U.S.C. § 3201(a). But the RRTA incorporates certain specified exclusions from gross income into its definition of "compensation." *See* 26 U.S.C. §§ 3231(e)(5)-(12). If those items were not income

in the first place, there would be no need to exclude them from "compensation." In this way, *Mickey* improperly renders the RRTA's exclusions superfluous. *See American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 864 (1983) (declining to read a statute in a manner that would cause "specific exceptions" to be superfluous).

### E.      Deductions from the Judgment

Because plaintiff is an active employee and Norfolk Southern has withheld RRTA funds from his paychecks in 2016, it will be necessary to subtract from the yearly maximums the amounts he has already earned in 2016 for Tier I, Tier II, and regular Medicare.

On March 17, 2016, Norfolk Southern obtained the paystub from plaintiff's March 18 paycheck. *See* **Exhibit H**. If the judgment were satisfied within the next two weeks, *i.e.*, before plaintiff was paid again, the RRB taxes on the verdict would be as follows:

Tier I:        6.2% of ($118,500-$19,845.03) $98,654.97 = $6,116,61

Tier II:       4.9% of ($88,200-$19,845.03) $68,354.97 = $3,349.39

Medicare:    1.45% of $250,000 = $3,625.00
            2.35% of $687,500 = $16,156.25

Total RRB Taxes: $29,247.25

These amounts would change slightly (*i.e.*, the amounts will need to be recalculated ) if the judgment were satisfied after plaintiff is paid again.

### IV.  CONCLUSION

For all the foregoing reasons, Norfolk Southern respectfully requests that the Court deduct from the judgment (1) the **$40,000.00** in advances that Mr. Loy received from Norfolk Southern between April 20, 2009, and July 8, 2010; (2) the lien amount of **$28,858.73** that Norfolk Southern is statutorily obligated to pay to the RRB; and (3) the Tier I, Tier II, and regular Medicare withholding taxes that Norfolk Southern is required to remit to the IRS currently total **$29,247.25**).

Respectfully submitted,


  /s/ David A. Locke
David A. Locke
E-mail: dal@stuartlaw.com
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN  47902-1010
Telephone: (765) 423-1561
**Attorneys for Defendant**


## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2016, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  Parties may access this filing through the Court's CM/ECF system.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system:

George T. Brugess
gbrugess@coganpower.com

John M Power
jpower@coganpower.com


  /s/ David A. Locke
David A. Locke

810887.1

-23-